**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**GREAT LAKES REINSURANCE (UK) PLC,**

    **Plaintiff/Counter-Defendant,**

-vs-                                                    **Case No. 6:05-cv-1660-Orl-22KRS**

**BLUE SEA, LLC,**

    **Defendant/Counter-Claimant,**

**FLATIRON CAPITAL CORP.,**

    **Defendant.**

## ORDER

This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION:** **DEFENDANT BLUE SEA, LLC'S MOTION FOR RULE 11 SANCTIONS (Doc. No. 29)**
>
> **FILED:** May 26, 2006
>
> **THEREON** it is **ORDERED** that the motion is **DENIED**.

**I. PROCEDURAL BACKGROUND.**

Plaintiff Great Lakes Reinsurance (UK) PLC ("Great Lakes") alleges in the complaint in this case that it issued a marine insurance policy to Defendant Blue Sea, LLC ("Blue Sea") for

coverage of its vessel, the *About Time*.[1] When the vessel sank shortly after it was insured, Blue Sea brought a claim for payment under its insurance policy with Great Lakes.

After conducting an investigation as to why the vessel sank, Great Lakes filed the Complaint for Declaratory Judgment in this case seeking a declaration that it is not obligated to pay Blue Sea under its insurance policy.  Doc. No. 1.  On April 28, 2006, Blue Sea served on Great Lakes a motion for sanctions under Federal Rules of Civil Procedure 11.  Doc. No. 29.  The Rule 11 motion is premised on Blue Sea's claim that Great Lakes did not properly investigate the allegations in the complaint before filing it.  *Id.*  Great Lakes did not dismiss its complaint.  *Id.*  Blue Sea filed the Rule 11 motion on May 26, 2006.

Great Lakes filed a memorandum in opposition to the motion for Rule 11 sanctions.  Doc. No. 36.  In support of its memorandum in opposition to the motion for Rule 11 sanctions, Great Lakes filed the Affidavit of Steven E. Goldman, doc. no. 36-2 at 1-7 (Goldman Aff.), which attached the following exhibits:

- Doug Wager Letter dated September 13, 2005, doc. no. 36-2 at 8-10;
- Doug Wager Letter dated September 21, 2005, doc no. 36-2 at 11-14;
- Doug Wager Letter dated October 18, 2005, doc. no. 36-2 at 15-16;
- Gary M. Bagliebter Letter dated April 28, 2006, doc. no. 36-2 at 17;
- Doug Wager Letter dated May 17, 2006, doc. no. 36-2 at18; and
- Michael Grant Email dated May 16, 2006, doc. no. 36-2 at19-21.

---

[1] The vessel was previously named the *Gloria J.*  Doc. No. 36-2 at 13.

In violation of Local Rule 3.01(c), Blue Sea filed a reply. Doc. No. 37. Attached to Blue Sea's reply as exhibits were an undated letter from Lawrence Miller, doc. no. 37-2, and a letter from William Hodgens, dated May 15, 2003, doc. no. 37-3. These letters are not supported by a declaration or other sworn statement reflecting the authenticity and admissibility of the documents. The Court will consider the reply in ruling on the motion.

## II.     ALLEGATIONS AND REPORTS OF INVESTIGATION.

On May 21, 2005, Great Lakes issued a marine insurance policy, No. 200/658/64720, to Blue Sea affording hull and machinery coverage in the amount of $550,000.00 for a 1988 Ocean Yachts fiberglass sport fisherman vessel named *About Time*. Doc. No. 1 ¶ 16; Doc. No. 1-2 at 5-7. On September 5, 2005, the *About Time* sank in calm waters at Boat Harbor Marina at Marsh Harbor, Abacos, the Bahamas, while Great Lakes' insurance policy was still in effect. Doc. No. 1 ¶ 19. Great Lakes then initiated an investigation as to why the *About Time* sank. *Id.* ¶ 20.

Great Lakes hired the marine surveying firm of Wager & Associates to conduct its investigation. Goldman Aff. ¶ 4. On about September 8, 2005, Michael Grant, a surveyor working for Wager & Associates, contacted the public adjuster hired by the owners of the *About Time* to help them in presenting an insurance claim. Doc. No. 36-2 at 9. The adjuster attempted to deny him access to the vessel. *Id.* Nevertheless, Grant was able to visit the vessel for a brief time. *Id.* He found the crew uncooperative. *Id.* at 9, 19-21. At that time, Wager & Associates did not form an opinion as to why the *About Time* sank. *Id.* at 10.

After further investigation, Wager & Associates advised Great Lakes that Lawrence Miller, purportedly an engineer, discovered on September 4, 2005, that the *About Time* had taken on

excessive water. *Id.* at 12. The bilge pumps on the vessel were engaged, but they were unable to discharge the water faster than it was entering the hull. *Id.* Miller made other efforts to pump the water from the vessel, but these efforts were unsuccessful. *Id.* The *About Time* settled to the bottom of the water at about 5:00 a.m. on September 5, 2005. The vessel was refloated later that morning. *Id.* The next day Blue Sea hired a public adjuster. Doc. No. 36-2 at 12.

After briefly surveying the vessel, Wager & Associates notified Blue Sea that the insurers were reserving their rights under the policy because no mitigation efforts had been undertaken with respect to the vessel's machinery. *Id.* Acting on that advice, Blue Sea conducted operations to mitigate the damage. *Id*.

Grant was subsequently able to perform a complete survey of the *About Time* jointly with the public adjuster. Doc. No. 36-2 at 20. He also spoke with Miller. *Id.*

Wager & Associates' investigation revealed that rain water as well as a rupture of the vessel's internal portable water piping caused the *About Time* to take on water. *Id*. at 12, 16. Wager and Associates concluded that the portable water piping ruptured because a pressure regulator was never installed. *Id.* at 12. Wager & Associates also found that three of the bilge pumps were improperly installed and one of the bilge pumps was improperly wired. *Id.* at 12, 15.[2] Wager & Associates concluded that the *About Time* was not seaworthy at the time that it sank, not was it at the time that Blue Sea entered into the marine insurance policy with Great Lakes. *Id*. at 16.

---

[2] In an undated and unverified letter submitted with Blue Sea's reply, Miller writes that the problems with the bilge pumps were caused when attempting to discharge the water from the *About Time* to keep it from sinking. Doc. No. 37-2 at 1.

All of Wager & Associates' reports were sent to T.L. Dallas (Special Risks) Ltd., managing agents for Great Lakes. Doc. No 36-2 ¶¶ 4, 5. After reviewing the reports, Alexander Mark Thomas, claims director for T.L. Dallas, contacted outside counsel, Steven E. Goldman, to whom he forwarded the investigation reports. *Id.* Goldman reviewed all of the reports and Wager & Associates' complete file on the matter. *Id.* ¶ 6. He also personally confirmed with employees of Wager & Associates the facts set forth in the investigative reports before drafting the complaint in this case. *Id*.

Sometime thereafter, Blue Sea made a claim against Great Lakes under the insurance policy demanding payment of the full price of repair or replacement. Doc. No. 1 ¶ 25. On November 4, 2005, Great Lakes filed the present complaint for declaratory relief seeking to avoid enforcement of the insurance policy. Doc. No. 1. In the complaint, Great Lakes alleges that the policy does not cover the damage to the *About Time* for four reasons: (1) the sinking of the *About Time* was not an "accidental physical loss" as required by the policy, *id.* ¶ 29; (2) improper installation or maintenance of the vessel's bilge pumps or bilge pump system, as revealed in Great Lakes' investigation, pre-existed the date on which coverage under the policy began, *id.* ¶ 34; (3) Blue Sea failed to exercise due diligence to maintain the *About Time* in a seaworthy condition as required by the insurance policy, *id.* ¶ 43; and (4) Blue Sea breached the insurance policy by misrepresenting or failing to disclose facts that were material to Great Lakes' decision to accept and continue the risk of insuring the *About Time*, i*d.* ¶ 43.

On April 28, 2006, Blue Sea served the Rule 11 motion on Great Lakes. Upon receipt of the document, Goldman contacted Wager & Associates to confirm the information contained in

the investigation reports. Doc. No. 36-2 ¶ 16. Wager & Associates reviewed the investigation notes, consulted with Michael Grant, the person who surveyed the *About Time*, and confirmed that all of the information provided to Great Lakes was accurate. Doc. No. 36-2 at 18-21.

### III.  STANDARD OF REVIEW.

Rule 11 provides, in pertinent part, as follows:

> [b]y presenting to the court . . . a pleading, . . . an attorney . . . is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, . . . the allegations and other factual contentions have evidentiary support, or if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .

Fed. R. Civ. P. 11(b)(3).

"In this circuit, a court confronted with a motion for Rule 11 sanctions first determines whether the party's claims are objectively frivolous – in view of the facts or law – and then, if they are, whether the person who signed the pleadings should have been aware that they were frivolous; that is, whether he would have been aware had he made a reasonable inquiry." *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996). All doubts as to whether Rule 11 has been violated should be resolved in favor of the party who signed the pleading. *McMahan Secs. Co. v. FB Foods, Inc.*, No. 8:04-cv-1791-T-24TGW, 2006 WL 2092643, at *2 (M.D. Fla. July 27, 2006).

**IV.     ANALYSIS.**

Blue Sea's motion for Rule 11 sanctions is insufficient on its face. Blue Sea submitted no information or evidence with its initial motion to support its contention that "Plaintiff and its attorneys knew or, through a reasonable inquiry, should have known, that none of the asserted grounds upon which the Plaintiffs seeks declaratory relief have any basis in fact." Doc. No. 29 at 2.[3] In its reply memorandum, Blue Sea sets forth, for the first time, the factual basis of its motion, albeit without any evidentiary support. Blue Sea's attempt to bolster its position in a reply memorandum violates the safe-harbor provision of Rule 11, which requires that the movant "describe the specific conduct alleged to violation subdivision (b)" of the rule in a motion served at least twenty-one days before the motion is filed. Fed. R. Civ. P. 11(c)(1)(A). Further, as discussed below, Blue Sea has not established that Rule 11 sanctions apply in this case.

   *A.     Whether the Complaint is Objectively Frivolous.*

In analyzing Blue Sea's motion for Rule 11 sanctions, the Court must first determine whether Great Lakes' claims are objectively frivolous. "Although sanctions are warranted when the claimant exhibits a 'deliberate indifference to obvious facts,' they are not warranted when the claimant's evidence is merely weak but appears sufficient, after a reasonable inquiry, to support a claim under existing law." *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998).

In examining the record, there is no showing that Great Lakes' claims are frivolous. As discussed above, after the *About Time* sank, Great Lakes hired Wager & Associates to investigate facts surrounding this occurrence. Following the investigation, Wager & Associates opined that

---

[3] Blue Sea is cautioned that motions filed with the Court are also subject to the requirements of Rule 11.

the *About Time* sank because of improper installation and maintenance of the bilge pump system, among other things. While Miller represents that the problems with the bilge pumps were created during the efforts to discharge the water from the *About Time* to prevent it from sinking, his statement is not evidence that can be considered by the Court. Furthermore, even if Miller's statement were considered, it would create an issue of fact rather than a finding that the complaint is objectively frivolous.

> B. *Whether Great Lakes Made a Reasonable Inquiry.*

The next step of the Rule 11 analysis is for the Court to determine whether the lawyer who filed the complaint would have been aware of the frivolousness of the pleading if he had made a reasonable inquiry. Such an analysis is not required here, as Blue Sea failed to show that Great Lakes' complaint is frivolous. Furthermore, the information presented to the Court reflects that Great Lakes made a reasonable inquiry before filing the complaint.

As discussed above, Great Lakes hired Wager & Associates to conduct an investigation. Wager & Associates surveyed the *About Time* and gathered information from Miller and other sources. There is no indication that Miller told Wager & Associates that he believed he had damaged or incorrectly connected the bilge pumps while trying to extract water from the *About Time*. Wager & Associates provided the results of its investigation to counsel for Great Lakes, Steven Goldman. Goldman reviewed Wager & Associates entire file and independently confirmed with individuals at Wager & Associates the information contained in the investigation reports before the complaint was drafted.

Accordingly, Blue Sea has not established the second factor necessary to support Rule 11 sanctions.

*C.     Sanctions.*

Great Lakes asks that the Court sanction counsel for Blue Sea for "compelling Plaintiff to bear the expense of responding to his motion." Doc. No. 36 at 6. Under Rule 11, "[i]f warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion." Fed. R. Civ. P. 11(c)(1)(A). Because both Rule 11 and Great Lakes' response to the motion put Blue Sea on notice that its conduct may warrant sanctions, and Blue Sea filed a reply to the response, which reply has been considered by the Court, Blue Sea has had fair notice of the possible award of sanctions for purposes of affording it due process and an opportunity to respond. *See In re Sunshine Jr. Stores, Inc.*, Nos. 04-16650, 04-16651, and 05-10031, 2006 WL 1982956, at * 10 (11th Cir. July 18, 2006).

In the present action, Blue Sea's motion for Rule 11 sanctions was facially insufficient. "The Court does not take motions for sanctions lightly and deplores the waste of time and money spent on issues that should and could have been resolved in another manner." *McMahan Sec. Co.*, 2006 WL 2092643, at *3. As Blue Sea's motion was completely unsubstantiated, an award of attorneys' fees is appropriate. Accordingly, on or before September 20, 2006, Blue Sea shall tender to Fowler White Boggs Banker P.A., counsel for Great Lakes, the sum of $500.00, to compensate Great Lakes, in part, for the attorneys' fees it incurred in responding to Blue Sea's motion.

## V. CONCLUSION.

Based on the foregoing, Defendant Blue Sea, LLC's Motion for Rule 11 Sanctions, doc. no. 29, is **DENIED**. It is further **ORDERED** that on or before September 20, 2006, Blue Sea shall tender to Fowler White Boggs Banker P.A. the sum of $500.00.

**DONE** and **ORDERED** in Orlando, Florida on August 24, 2006.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties